OPINION *Page 2 
{¶ 1} On September 14, 2007, the Stark County Grand Jury indicted appellant, Nathaniel Joe Walker, on two counts of possession of cocaine in violation of R.C. 2925.11. Said charge arose from a stop of a vehicle being driven by Jamal Anthony Smith. Appellant was a passenger in the vehicle.
 {¶ 2} On October 1, 2007, appellant filed a motion to suppress, claiming an illegal stop and search. A hearing was held on October 16, 2007. By judgment entry filed November 7, 2007, the trial court denied the motion.
 {¶ 3} On November 13, 2007, appellant pled no contest to the charges. By judgment entry filed same date, the trial court found appellant guilty and sentenced him to an aggregate term of three years in prison.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE."
 I {¶ 6} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 7} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning *Page 3 
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485;State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v.Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657,1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 8} Appellant's motion was based upon the theory that there was no reason for the stop or his search i.e., there were no reasonable articulable facts rising to the level of criminal activity.
 {¶ 9} In Terry v. Ohio (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to Terry, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences *Page 4 
from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. State v.Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.
 {¶ 10} In its judgment entry filed November 7, 2007, the trial court found the stop to be an investigative stop based upon reasonable articulable facts:
 {¶ 11} "In this case, the time of the incident is between 3:00 and 4:00 a.m. in a high-crime area known for drugs and prostitution; the Defendant's automobile was stopped in the middle of the street surrounded by at least four individuals peering into the automobile. These facts justify at least a suspicion that criminal activity is afoot, especially when viewed through the eyes of experienced police officers. However, when upon observing the cruiser the four individuals scatter and the vehicle takes off at the mere sight of the cruiser, the suspicion becomes reasonable. Whether the driver's machinations after driving off lend credence to the officer's belief is debatable, but it does not reduce the level of concern.
 {¶ 12} "The driver's conduct upon being stopped is appropriate, but the passenger's is not. His continuous moving about, especially in light of the circumstances, not only adds to the reasonable suspicion, but in facts elevates it to probable cause that criminal activity is occurring. To jam your hand into the seat or into the console in front of an officer that has just stopped your car at 3:00 a.m. is certainly conduct which would lead one to believe that such conduct is not only not innocent, but maybe dangerous." *Page 5 
 {¶ 13} Canton City Police Officer Mark Diels testified he observed a vehicle stopped in the middle of the roadway obstructing the flow of traffic. T. at 10-11, 21-22. Several individuals were standing on both sides of the vehicle. T. at 9. When his cruiser approached the vehicle, the people scattered and the "vehicle immediately took off." T. at 10. The vehicle first signaled left, then the signal went off, and the vehicle went to another intersection and turned left. Id. The vehicle then turned left again. T. at 10-11. The area was a high drug area, and it was 3:44 a.m.
 {¶ 14} Officer Diels stopped the vehicle. Upon approaching the vehicle, he recognized the driver, Jamal Anthony Smith, as someone he had stopped approximately four to five years prior and Mr. Smith had fled from him. T. at 12. Because of this fact, he had Mr. Anthony exit the vehicle and he was placed in the police cruiser. T. at 13. Commensurate with these facts, Officer Diels noted the passenger, appellant herein, was moving around inside the vehicle in an attempt to conceal something. T. at 12. Officer Diels asked Mr. Smith if he could search his vehicle, and Mr. Smith consented. T. at 13. Because of appellant's furtive movements, Officer Diels and Officer Thomas Hastings asked appellant to exit the vehicle. T. at 15. Appellant did not cooperate immediately:
 {¶ 15} "Q. When you go to assist Officer Hastings what happens?
 {¶ 16} "A. He was still seat belted in the vehicle.
 {¶ 17} "Q. Officer Hastings was or-
 {¶ 18} "A. No, the passenger was seat belted in. But Officer Hastings had ahold of his arm because he kept on digging inside the passenger seat. And we didn't know *Page 6 
what he was trying to grab. So Officer Hastings reached in the vehicle, grabbed his arm so he would quit trying to reach for that item.
 {¶ 19} "Q. What did you do?
 {¶ 20} "A. I went around to the driver's side and I advised him to quit moving around because he was going to get shot. I reached in. I unbuckled him. I came back around and then we had him exit the vehicle and we secured him." T. at 14-15.
 {¶ 21} Upon searching the vehicle in the area of the furtive movements, the officers found several plastic grocery bags tied in knots. T. at 15. One bag contained "a large amount of crack cocaine and also powder cocaine." T. at 15-16.
 {¶ 22} As acknowledged by the Supreme Court of Ohio, the decision on reasonable suspicion is not to be viewed in a vacuum. The standard is the totality of the circumstances as viewed by a reasonably cautious police officer on the scene who is guided by his experience and training. Freeman, supra.
 {¶ 23} The actions involving the vehicle in this case taken individually may not rise to the level of reasonable suspicion. However, when the time of night is way past the time for neighborly discourse in the street, the area is known as a high drug area, the actions of the individuals standing outside the vehicle were consistent with drug buys, the flight of the individuals and the vehicle upon the approach of the police cruiser, coupled with a de minimus traffic offense, we find there existed reasonable articulable facts to stop the vehicle. Once stopped, the officers' knowledge and the observations of furtive movements by appellant pass muster for the search of the vehicle, which in fact permission for the search had been granted by Mr. Smith. *Page 7 
 {¶ 24} Upon review, we find the trial court did not err in denying appellant's motion to suppress.
 {¶ 25} The sole assignment of error is denied.
 {¶ 26} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
 Farmer, J. Gwin, P.J. and Wise, J. concur. *Page 8 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. *Page 1